Mickey HORNE, et al., Plaintiffs,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant.

No. CIV.A. 03–A–205–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 27, 2003.

Jere L. Beasley, M. Wayne Sabel, Montgomery, AL, for Plaintiffs.

Chris Mitchell, Tammy L. Dobbs, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on the Plaintiff's Motion to Facilitate Nationwide Class Notice Pursuant to 29 U.S.C. § 216(b), or in the Alternative, to Issue Partial Notice, filed on June 16, 2003.

The Plaintiff asks the court to certify this case as a collective action under the Fair Labor Standards Act ("FLSA"), to order identification of potential opt-ins, and authorize the issuance of notice to be mailed to certain present and former employees of the Defendant.

### II. FACTUAL BACKGROUND

The Plaintiff, Mickey Horne, was an employee of USAA in the State of Alabama. While employed with USAA, he held the position of appraiser. He seeks to bring claims in a collective action of current and former appraisers of USAA.

Horne contends that as a non-exempt employee under the FLSA, he was eligible for overtime payments, but that the vast majority of his overtime work went uncompensated. Horne has provided an affidavit in which he states that his daily routine as an appraiser required him to travel extensively to investigate property claims. He further states that he wrote reports on his investigations and submitted them to the corporate office by computer. He states that he had goals and expectations for his work production which were set by USAA, and that these goals were not attainable during a normal 40–hour week. According to Horne, he was told by his supervisor, Steve Breckenridge, that USAA would not pay overtime and that he had to clock out everyday at 5:00 p.m. Affidavit of Mickey Horne. He states that he believes there

are other appraisers who are similarly situated to him whom he believes would join in this lawsuit. *Id.*

### III. DISCUSSION

■ Section 216(b) of the FLSA provides, in pertinent part:

Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b). *See Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)[1]; *Hipp v. National Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir.2001) ("The decision to create an opt-in class under § 216(b), like the decision to certify a class under Rule 23, remains soundly within the discretion of the district court"). The power to authorize notice must, however, be exercised with discretion and only in appropriate cases. *See Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir.1983).

---

1. *Hoffmann–La Roche* involved an ADEA collective action, brought as a § 216(b) action pursuant to the ADEA's express statutory adoption of § 216(b) of the FLSA.

In the absence of statutory or regulatory guidance as to when or how this discretion to authorize notice to "similarly situated" employees is to be exercised, the Eleventh Circuit has indicated that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a Plaintiffs class under the FLSA. Specifically, "the district court should satisfy itself that there are other employees of defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir.1991). Horne has the burden of demonstrating a reasonable basis for crediting the assertion that aggrieved individuals exist in the class he proposes. *See Haynes*, 696 F.2d at 887.

The Eleventh Circuit has expressed the view that the "similarly situated" requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir.1996). The court further stated "that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b) . . . ." *Id.*

This court has previously determined that, although the Eleventh Circuit has made it clear that in this circuit a plaintiff may establish that others are "similarly situated" without pointing to a particular plan or policy, a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions, because without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse. *White v. Osmose*, 204 F.Supp.2d 1309 (M.D.Ala.2002).

A plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated. *See Grayson*, 79 F.3d at 1096. Ordinarily, this burden is not heavy and may be met by detailed allegations supported by affidavits. *Id.* at 1097. The Eleventh Circuit, relying on Fifth Circuit precedent, has outlined a two-tiered approach whereby the court applies a lenient standard of "similarly situated" at the notice stage, and then applies a more stringent standard of "similarly situated" at a stage typically precipitated by a defendant's motion for decertification. *See Hipp*, 252 F.3d at 1218; *see also Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001).

In this case, Horne contends that USAA imposes certain production goals and that appraisers, given the scope of the territory for which they are responsible, cannot accomplish those production goals within forty hours a week. Horne contends that all appraisers employed with USAA are subject to these goals. In support of his theory, Horne has provided his own two sworn statements and some documentary evidence. USAA has also provided documentary evidence in response to Horne's argument that relevant evidence is within the control of USAA.

USAA has essentially disputed that the documentary evidence can demonstrate that Horne ever worked in excess of forty hours and was not paid overtime wages. This is not the proper inquiry before the court, however. Horne has alleged, and provided a sworn statement to support, that he worked in excess of forty hours and was not paid overtime wages. Further, the court has looked at the documentary evidence provided of Horne's hours and it appears that there is at least some

evidence that Horne worked hours for which he was not compensated. For example, the time card entry for the week ending February 2, 2002 indicates that Horne clocked out at 5:00 p.m. each day for a total of forty hours, whereas the computer log in and log out records indicate that on February 1, 2002, Horne logged in at 7:43 p.m. and logged off at 8:16 p.m., and logged in again at 8:25 p.m. and off at 8:39 p.m. While the court is not considering the merits of Horne's claim at this time, this evidence is relevant to the collective action issues because it seems to demonstrate that overtime work occurred after 5:00 p.m., but was not reflected on the time cards.[2] This documentary evidence is consistent with Horne's testimony that he was told by Breckenridge that he had to clock out every day at 5:00 p.m. Horne Affidavit.

Horne has contended that this case should be certified as a collective action for all current and former appraisers employed by USAA. Horne argues that all of the territories within USAA's employ have identical production goals. As stated earlier, Horne argues that because the appraisers all have the same production goals, and all have the same job duties, he is similarly situated to all other appraisers.

■ The court cannot agree that Horne has demonstrated that this case is appropriately certified as a collective action as to all former and current appraisers of USAA. As this court explained in *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D.Ala.1999), a plaintiff must demonstrate that employees outside of the work location for which the plaintiff has provided evidence were similarly affected by alleged work policies in order for the court to certify a collective action which extends beyond the plaintiff's own work location.

In *Harper*, this court concluded that it could not "satisfy itself that there are other employees (at other restaurants) who desire to 'opt-in' and who are 'similarly situated,'" in part because those employees had different managers. *Id.* at 363.

■ In this case, the potential difference between Horne and other appraisers is significant because, although Horne states that all appraisers have the same production goals, those production goals are not alleged by Horne to be the sole cause of denial of overtime pay. It is apparently undisputed that USAA does pay overtime, as Horne himself received overtime pay on some occasions. Therefore, even accepting that the production goals could not be met within 40 hours per week, because Horne was paid some overtime, the court cannot conclude that there were similarly situated individuals who were denied overtime merely because the extra work was required by the production goals. Horne's alleged failure to receive overtime could merely be an occurrence unique to Horne. The reason that Horne was not being paid overtime, under his theory and evidence, is that although he had incurred the extra work required by the production goals, he was not allowed to claim overtime because he had to clock out by 5:00 p.m. This requirement apparently came from Breckenridge, whom Horne alleges told him USAA would not pay overtime, and to whom Horne attributes the statement that Horne had to clock out by 5:00 p.m. Al Knight, Horne's supervisor at the time of his termination, has stated that he never told Horne he had to clock out by 5:00 p.m. Knight Affidavit. Therefore, other appraisers who were not supervised by Breckenridge, while they may have been made subject to the same production

---

**2.** USAA's evidence that these records are not proof of actual time worked goes to the merits of Horne's claim.

goals, were not necessarily subject to the requirement that they clock out by 5:00 p.m. and, therefore, should not be included within the scope of any purported collective action in this case.[3]

If the scope of the collective action were limited to appraisers supervised by Breckenridge, the case could bear some similarity to this court's decision in *White v. Osmose*, Inc., 204 F.Supp.2d 1309 (M.D.Ala. 2002). In *White*, the plaintiff testified that his direct supervisor told him he would be fired if he turned in his time spent performing specific tasks, and that other managers told him not to submit time for certain activities. This court concluded that there was sufficient evidence that there were similarly situated persons who worked under these individuals who may have desired to opt-in to the litigation. *Id.* at 1316–17.

■ USAA, however, contends that Horne has not demonstrated that any similarly-situated individuals desire to opt in to this case. USAA relies on Horne's initial disclosures in which he states that persons within the same job classification "may" have discoverable information, and on his affidavit in which he states that he "believes" other appraisers similarly situated to him exist, and "believes" that they will desire to opt in to this case if it is certified as a collective action. USAA states that Horne has not presented any evidence that similarly-aggrieved individuals exist.

In *White*, the court had before it evidence that there were three additional persons who were aggrieved in the same manner as the named plaintiff. *White*, 204 F.Supp.2d at 1316. In this case, no such evidence is before the court. The court has only Horne's own affidavit evidence that, based on his "observation, experi-

ence, and dealings within USAA," he "believes" there are other similarly situated appraisers who would join this lawsuit. Horne Affidavit. There is not even an allegation in his Complaint that other appraisers supervised by Breckenridge were told to clock out at 5:00 p.m.

■ Horne may meet his "burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary."' *Grayson*, 79 F.3d at 1097. While the burden at stage one in the conditional collective action certification process is "not heavy," the court must at least satisfy itself that there are other persons who are similarly situated and who desire to opt into this case. *Dybach*, 942 F.2d at 1567–68. Under the only theory in this case supported by the allegations and evidence which have been presented to the court, there has to be some reasonable basis from which to conclude that there are appraisers who worked in excess of forty hours a week because of the production goals placed upon them, but who were not paid for overtime, because although they worked after 5:00 p.m., they were told to clock out at 5:00 p.m. This court does not even have evidence before it that there was another appraiser who worked in excess of forty hours a week because of the production goals, but was not paid overtime. Horne's affidavit evidence that based on his observation and experience, he believes there are other similarly situated appraisers who would join this lawsuit does not even rise to the level of an affirmative, albeit conclusory, statement that similarly situated ap-

---

**3.** USAA, while maintaining that this court should not certify this case as a collective action in any respect, contends that if the court were to conclude that the case should be certified as a collective action, the scope of the collective action should be limited to those who shared common supervision with Horne.

praisers exist, since Horne states only that he "believes" these individuals to exist.

In arguing that he has met his burden, Horne relies on *Garner v. G.D. Searle Pharmaceuticals & Co.*, 802 F.Supp. 418 (M.D.Ala.1991). While in *Garner* the court did not require specific proof that other persons desired to opt in to the collective action, the court expressly noted that the plaintiff had identified 40 other women who could each point to a male who been hired into the same pay grade at a higher salary. *Id.* at 422. This court does not have such specific evidence before it. In the instant case, the only identification of a group comes in Horne's reply brief, based on USAA's evidence that there are thirteen appraisers in Alabama and Georgia. Knight Affidavit at ¶ 1. Al Knight, Horne's supervisor subsequent to Breckenridge, however, only supervises four appraisers who are in Alabama and Georgia. *Id.* There is, therefore, no evidence before the court that any appraisers, other than Horne, were or are supervised by Breckenridge.[4] The Complaint only refers to "others similarly situated." *See Stewart v. Project Consulting Services, Inc.*, No. Civ. A. 99–3595, 2001 WL 1000732 at *2 (E.D.La. Aug.29, 2001)(denying collective action certification where no other potential member of the class is identified and the plaintiff merely sued on behalf of "current and former employees similarly situated"). The court must conclude, therefore, that Horne has failed to meet his burden under the FLSA.

### IV. *CONCLUSION*

This court previously has had occasion to consider whether a plaintiff has adequately met the burden under the FLSA of establishing that similarly situated persons exist who would desire to opt in to a collective action. In the course of deciding those cases, the court has been presented with evidence which included everything from affidavits of other employees, *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D.Ala.1999), to consents to join the suit, *White v. Osmose, Inc.*, 204 F.Supp.2d 1309 (M.D.Ala.2002), to expert evidence, *Barron v. Henry County School System*, 242 F.Supp.2d 1096 (M.D.Ala.2003). Although there is a broad range of evidence which could be presented, Horne's submissions in this case fail to meet even the light burden imposed under the FLSA. Horne's allegations and evidence may adequately point out the policies pursuant to which he feels he personally was denied overtime, but he has failed to identify any other person who worked overtime hours required by the policies of his employer for which he or she was not paid overtime compensation.

The competing considerations of the economy of scale envisioned by the FLSA collective action procedure, *see Hoffmann–La Roche*, 493 U.S. at 170, 110 S.Ct. 482, and the caution that "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation," *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (N.D.Ala.1995), require that this court determine that similarly situated persons exist before certifying, even preliminarily, a case as a collective action. Because Horne has failed to satisfy even the light burden placed upon him, the court concludes that it is inappropriate in this case to certify a collective action which allows for notice to be provided to other appraisers.

Accordingly, the Motion to Facilitate Nationwide Class Notice Pursuant to 29

---

4. The court does not even have an allegation or evidence before it addressing whether

Breckenridge is still employed by USAA.

U.S.C. § 216(b), or in the Alternative, to Issue Partial Notice, is due to be and is hereby ORDERED DENIED.